IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 2, 2006

**MITCHELL BOWERS v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-24463     Carolyn Wade Blackett, Judge**

---

**No. W2005-01051-CCA-R3-PC  - Filed November 7, 2006**

---

The petitioner, Mitchell Bowers, was convicted of first degree murder and sentenced to life imprisonment in 1997. He appeals the denial of his post-conviction petitioner in which he asserted that trial counsel was ineffective in: (1) failing to advise him that he was not required to testify in his own behalf at trial, and (2) failing to disclose that counsel had previously represented the victim. Upon review, we conclude that the evidence does not preponderate against the findings of the post-conviction court; therefore, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Robert B. Gaia, Memphis, Tennessee, for the appellant, Mitchell Bowers.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Gail Vermaas, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Facts and Procedural History

The petitioner was convicted of first degree murder in 1997. This court related the proof of guilt in State v. Bowers, No W1999-01868-CCA-MR3-CD, 1999 Crim App LEXIS 1294 (Tenn. Crim. App. Dec. 27, 1999). The petitioner filed a petition for post-conviction relief on January 16, 2001. Counsel was appointed, and a hearing was conducted on the petitioner's claims. The trial court denied the petition by order entered March 18, 2005, and this appeal followed.

During the post-conviction hearing, the petitioner testified that his trial counsel had previously represented him on other charges. He said that he did not get a copy of his indictment

and that it was never read or shown to him. He further testified that his counsel never discussed the facts of the case with him nor did he tell him they were going to trial. He said that trial counsel told him that the State was offering a plea to voluntary manslaughter with three to six years at thirty-percent as a Class E felony. He said that this was offered because it was his first felony and he had been in no major trouble. He told counsel that he wanted to accept the State's offer and that he knew nothing about a trial until the day it began. He claimed that he was not aware of a suppression motion and did not remember being present for the suppression argument. He said that counsel slept while the trial was going on. He also said counsel did not ask any "main" questions of him during his testimony. He recalled that the trial lasted from three to four hours and a lunch break. He said that counsel called only his ex-mother-in-law and himself as witnesses in his defense. He claimed that he knew nothing of his right against self-incrimination.

He said that after his conviction, he contacted counsel regarding his papers but never received them. He also said counsel told him to have someone from the public defender's office to get the papers for him. He said counsel came to visit him on May 5, 1998, and told him he felt guilty for not properly representing him because he was using drugs and drinking during the time of his trial. He said that this visit was the last contact he had with counsel.

On cross-examination, he testified that counsel had represented him during his divorce and on other misdemeanor charges. He said he was not disappointed when counsel was appointed to him because he had been pleased with his representation in the past. He recalled that counsel only made four objections during the trial and said that he did not talk to him about testifying. He acknowledged that he voluntarily went to the police and gave a statement on the morning of the murder. During redirect, he said that counsel only slept through part of the trial.

Next, the petitioner's sister, Ella Leake, testified that counsel told the family that there was an offer of three to six years and that there would be no trial. She said that counsel told her this in his office and at the courthouse. She also said she knew counsel visited the apartment above hers at a time when the occupants sold drugs. On cross-examination, she said that counsel told the family the State would offer three to six years. She also said that she had no personal knowledge of counsel abusing drugs or alcohol.

Ophelia Payne, another sister of the petitioner, testified that counsel told the family not to worry because the petitioner would receive an offer of three to six years and that there would be no trial. She said there was no hedging in counsel's words. She testified that because she operates a homeless shelter for women with drug and alcohol addiction and severe mental illness, she has received training through the Shelby County Correctional Department on how to determine if someone is under the influence. She testified that she was trained to judge a person's appearance including dilated eyes, sluggish speech, and erratic behavior. She said she had five to six years experience but the post-conviction court did not qualify her as an expert. She said that she asked counsel about the six-year offer at court and that he told her they would "just see what happens." She said on the second day of trial, counsel seemed "distance (sic)" and she saw him nod a couple

times like he was falling asleep. She believed he might have fallen asleep four times. On cross-examination, she said she received her training three years ago, which was after the petitioner's trial.

Next, trial counsel testified that he could not offer an explanation for why the witnesses would say what they said. He said he did not use drugs and he would not have slept during a trial. He said that he knew the petitioner and the victim because they patronized a club that he owned. He did not recall the suppression hearing or whether the petitioner was present during the hearing. He said that he did not tell the family about a plea offer because there never was an offer from the prosecution. He said it was not the policy of the district attorney's office to make offers on charges of first degree murder. He could not recall advising the petitioner that he did not have to testify.

On cross-examination he said that he had been practicing law for twenty-five to twenty-seven years and that this was the first murder trial that he lost. He said the petitioner was a good man who made some mistakes and he felt bad for him and wished him well. He said no plea offer was ever made and his only explanation for their recollection of three to six years was his discussions with them regarding the possible ranges of punishment. He said that he believes it is "always bad" to allow a defendant to testify. He recalled that the petitioner insisted that he call the former in-laws because the petitioner believed that they would testify on his behalf. They did not. Counsel said that he never smoked crack, never fell asleep, was handicapped only by the facts, and right or wrong, he likes to win.

During redirect, he testified that the victim was choked with a rope. He said that self-defense is always an option in a murder case. He said that he called the ex-mother-in-law at the petitioner's insistence. He called her without speaking to her previously because the petitioner requested that she testify. He also said he should have further pursued the potential conflict issue.

The State's only witness was J. Robert Carter, Jr., the lead prosecutor during the trial. He testified that there was no plea offer of involuntary manslaughter. He said that counsel's actions were good during the trial and that he worked to show a lesser charge to the jury on his client's behalf. He never felt that counsel was inattentive or impaired. He said that it was his duty as an officer of the court to notify the court if he felt an attorney was impaired. The petitioner did not cross-examine the witness, and the State rested its proof. The court took the matter under advisement to issue written findings in the future.

By written order entered March 18, 2005, the post-conviction court issued written findings denying the petition for post-conviction relief. The post-conviction court found that the petitioner failed to prove his allegations of fact by clear and convincing evidence to sustain any relief. The court specifically found that each of the petitioner's claims of ineffective assistance of counsel were without merit. The court determined that the petitioner did not carry his burden of proof by showing that a plea offer existed or that counsel did not inform him of his right not to testify. The post-conviction court addressed the issue of a potential conflict of interest due to counsel's prior representation of the victim. However, the post-conviction court denied relief because it was not raised in the petition and the petitioner "failed to proffer an articulate argument able to be proved by

clear and convincing evidence." The trial court denied relief on other grounds that are not raised in this appeal.

<u>Analysis</u>

On appeal, the petitioner contends that the post-conviction court erred in denying relief based on: (1) ineffective assistance of counsel, and (2) failure of counsel to disclose his prior representation of the victim. The post-conviction judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. <u>State v. Burns</u>, 6 S.W.3d 453, 461 (Tenn.1999). Those findings of fact are afforded the weight of a jury verdict, and this court is bound by those findings unless the evidence in the record preponderates against those findings. <u>Henley v. State</u>, 960 S.W.2d 572, 578 (Tenn.1997); <u>Alley v. State</u>, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This court may not reweigh or reevaluate the evidence nor substitute its inferences for those drawn by the post-conviction court. <u>State v. Honeycutt</u>, 54 S.W.3d 762, 766 (Tenn.2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. <u>Fields v. State</u>, 40 S.W.3d 450, 458 (Tenn.2001).

This court reviews a claim of ineffective assistance of counsel under the standards of <u>Baxter v. Rose</u>, 523 S.W.2d 930 (Tenn.1975), and <u>Strickland v. Washington</u>, 466 U.S.668, 104 S. Ct. 2052 (1984). The petitioner has the burden to prove that the attorney's performance was deficient and that the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. <u>Strickland</u>, 466 U.S. at 687, 104 S. Ct. at 2064; <u>Goad v. State</u>, 938 S.W.2d 363, 369 (Tenn.1996); <u>Butler v. State</u>, 789 S.W.2d 898, 899 (Tenn.1990). The failure to prove either deficiency or prejudice justifies denial of relief; therefore, the court need not address the components in any particular order or even address both if one is insufficient. <u>Goad</u>, 938 S.W.2d at 370. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068.

The test in Tennessee to determine if counsel provided effective assistance is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. <u>Baxter</u>, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065; <u>State v. Honeycutt</u>, 54 S.W.3d 762, 769 (Tenn.2001). Therefore, in order to prove a deficiency, a petitioner must show "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." <u>Goad</u>, 938 S.W.2d at 369 (citing <u>Strickland</u>, 466 U.S. at 688, 104 S. Ct. at 2065). In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Nichols v. State</u>, 90 S.W.3d 576, 587 (Tenn.2002) (citing <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065). The fact that a particular strategy or tactic failed

or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based on adequate preparation. Henley v. State, 960 S.W.2d 572, 579 (Tenn.1997); Hellard v. State, 629 S.W.2d 4, 9 (Tenn.1982).

Here, the petitioner argues that he was denied effective assistance of counsel and claims that he was never advised of his constitutional rights concerning self-incrimination. However, he fails to present any proof other than his own testimony to support this argument. The post-conviction court held that the petitioner did not prove by clear and convincing evidence that counsel failed to inform him of his right not to testify. It relied on counsel's testimony that it was his practice to inform defendants of this right despite the fact that he had no independent recollection of informing the petitioner of his right not to testify. The petitioner has presented only his own testimony as proof. The trial court accredited the testimony of counsel, a finding of fact which is conclusive on appeal because the facts do not preponderate otherwise. See Henley, 960 S.W.2d at 579.

Next, the petitioner argues that counsel was ineffective for representing the petitioner after previously representing the victim. He maintains that counsel "went through the motions of counsel without paying attention to the details of effective counsel on his client's behalf." However, he does not present any proof or authority to support his claim of ineffective assistance. The trial court held that the petitioner failed to "proffer an articulate argument able to be proved by clear and convincing evidence." We conclude that the evidence does not preponderate against the findings of the trial court, and we affirm.

This court has long followed the position that ineffective assistance of counsel may result if counsel's performance is affected by a conflict of interests. Strickland, 466 U.S. at 692, 104 S. Ct. at 2067. Prejudice is presumed if the defendant is able to demonstrate that an actual conflict of interest adversely affected the performance of his attorney. Id., Netters v. State, 957 S.W.2d 844, 847 (Tenn. Crim. App. 1997). For the petitioner to prevail based on a conflict of interest, the conflict must be actual and significant, not irrelevant or "merely hypothetical." Howard Clifton Kirby v. State, No. 03C01-9303-CR-00074, 1994 Tenn. Crim. App. LEXIS 625, at *4 (Tenn. Crim. App., Knoxville, Sept. 28, 1994), perm. app. denied (Tenn.1995).

Here, no proof has been presented to demonstrate that an actual and significant conflict of interest existed. The petitioner testified at the post-conviction hearing that, initially, he hired counsel before he was eventually appointed to him. Further, the petitioner stated that he was pleased that counsel was appointed to him because he had been pleased with his prior representation. The petitioner has failed to show that any conflict adversely affected his counsel's performance. We affirm the judgment of the post-conviction court.

<u>Conclusion</u>

For the foregoing reasons and the record as a whole, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE